# COURT OF APPEALS.

CHARLES PITT and WILLIAM PITT, appellants agt. ERASTUS DAVISON, impleaded with JOSEPH DAVISON, respondent.

1. Under the statue (2 *Rev. Stat.* 534, *O. P.* § 5), relative to contempts, two methods of proceeding against a party who is guilty of a contempt in refusing to obey a judgment in a civil action are provided:

(1.) The court shall either grant an order on the accused party to show cause why he should not be punished for the alleged misconduct; or,

(2.) Shall issue an attachment to arrest such party, and to bring him before the court to answer for such misconduct.

2. If the proceeding by attachment is adopted, the party is to be arrested and to be personally brought before the court, unless he gives bail. On being brought before the court, or appearing pursuant to his bail bond, interrogatories are to be filed and administered, if he denies the contempt.

Under this mode of proceeding, no order for punishment of the accused by fine or

imprisonment can be made, unless he shall have been personally brought before the court, or voluntarily appeared there.

3. If the proceeding by order to show cause is adopted, and it is to enforce a civil remedy, if the party in default has already had the opportunity of contesting his liability to perform what the proceeding seeks to compel him to perform, such proceeding is in effect but the execution of the judgment or order against him.

3. It is a proceeding in the action, and all the papers are to be entitled in the action. The order to show cause, in the absence of any statutory provision to the contrary, is governed by the practice of the court in regard to orders to show cause, both in respect to its service and the further proceedings upon it.

Under such practice, it is good service to serve it on the accused party's attorney in the action, even after judgment.

5. Under sections 418 and 285 of the Code, the papers to bring the party into contempt, necessary, in this case, to be personally served on the defendant, are the certified copy of the judgment and the summons, and the underwriting of the referee requiring the defendant to appear before him and make the conveyance.

When these are personally served, if the defendant refuses to comply, he is brought into contempt.

6. The 12th section (2 *R. S.* 278, *O. P.*), which provides that "contempts committed in the immediate view and presence of the court may be punished summarily, and in other cases the party charged shall be notified of the accusation, and have a reasonable time to make his defense," is by the succeeding 14th section held not to apply to any proceeding against parties or officers, as for a contempt to enforce any civil right or remedy.

7. In a proceeding by order to show cause, interrogatories are not necessary; for, if the court have obtained jurisdiction of the person of the defendant in the manner above provided, it retains that jurisdiction, for all purposes of enforcing the judgment, until its requirements are fully performed and executed.

8. After judgment obtained, no matter what would have constituted a defense to the judgment, and if in due time and manner brought before the court would have prevented it, can be allowed as a reason why it should not be enforced.

9. There is a manifest distinction between proceedings to enforce criminal contempts and those to enforce civil remedies.

10. The case of *Pitt* agt. *Davison* (37 *Barb. p.* 100) reversed, and *Pitt* agt. *Davison* (12 *Abb. p.* 385) affirmed), and *Davison's Case* (13 *Abb. p.* 129) sustained.

*December Term*, 1867.

ON APPEAL from the first judicial district.

This case arose on an appeal from an order made by the general term of the first judicial district, after final judgment reversing an order made by Mr. Justice SUTHERLAND, likewise after judgment, so far as it denied a motion to discharge the respondent, Erastus Davison, from arrest; and also setting aside the commitment of the said Davison, and discharging him from imprisonment.

Judgment had been rendered in this action on a report of referee, that the defendants specially perform their contract

with the plaintiffs, to convey to them a house and lot in Twenty-sixth street, New York, estimated, at the time of the motion below, to be worth $10,000, and for which plaintiffs had principally paid.

It was rendered on the 7th day of May, 1856. *It was never appealed from.* A certified copy of this judgment was personally served on the defendants, with a summons to attend before the referee, Mr. Cambreleng, to carry into effect the decree, by executing the conveyance in accordance with the judgment.

On the 27th June, 1856, the parties attended before the referee. The plaintiffs, with their counsel, offered to perform what was required of them in the decree, and requested the defendants, who were then and there represented by counsel, to perform their part of the decree.

In excuse of performance, the defendants set up, by their affidavits, matters alleging their inability to comply. These excuses appear in the opinion. The referee overruled their excuses, and they then refused to comply. The referee, on the 30th June, 1856, made a special report to the court of what transpired before him on the 27th June, 1856, annexing the defendants' affidavits.

On that report, and on the judgment roll, Mr. Justice DAVIES (at that time in the supreme court) granted an order for the defendants to show cause why an attachment should not be issued against them, and they be punished for their alleged contempt and misconduct in disobeying the decree. The plaintiffs' counsel tried for seven months to have the papers served on the defendants personally, but without avail. As they had absented themselves to avoid service of process, the judge ordered the papers to show cause to be served on their attorney. After the papers were served, an adjournment was procured by defendants' attorney, to enable the latter to communicate with his clients, which he did, and he was instructed by Erastus Davison to defend the motion. That motion was heard and fully discussed before Mr. Justice

DAVIES, who, on the 30th day of December, 1857, made an order of commitment of the defendants until they should comply with the decree and convey the premises in controversy. On that motion before Mr. Justice DAVIES, counsel appeared for the defendants and opposed the relief sought by the plaintiffs below; but Mr. Justice DAVIES overruled his objections, and adjudged the defendants to be guilty of a contempt.

No appeal was taken from this adjudication. The defendants kept out of the way for nearly three years, until early in November, 1860, Erastus Davison was arrested under a mittimus issued in pursuance of that order, and committed to Eldridge street prison, where he was until the decision of the General Term.

After being arrested, the defendant Erastus Davison made various applications to be discharged, which are reported in 12 *Abb.*, *p.* 385 and 13 *Abb.*, *p.* 129.

The defendant finally moved, before Mr. Justice SUTHERLAND, for his discharge, who denied the motion to discharge without costs and without prejudice, and with leave to the defendant Erastus Davison, to renew his motion, and at the same time, or prior to its renewal, to further move the court to modify, change or amend the original judgment, so as to put in evidence certain facts, and to change the judgment from a judgment for specific performance into one for damages.

The defendant Erastus Davison appealed from the denial, and the general term *reversed the order denying the motion to discharge, set aside the order of commitment, and discharged the defendant E. Davison from imprisonment.*

From this order of reversal the Messrs. Pitt, the plaintiffs below, appealed.

D. McMahon, *for appellants.*

I. The order of reversal by the general term is appealable,

because it is a·final order affecting a substantial right made upon a summary application, in an action after judgment. (*Betts* agt. *Garr*, 25 *N. Y. R.* 383 ; *Clarke* agt. *City of Rochester*, 34 *N. Y. R. p.* 356, *opn.*)

II. The judgment in this action was for a specific performance, and a conveyance by good and satisfactory title, in fee simple, discharged from all liens and incumbrances, of a house and lot in Twenty-sixth street, New York.

The power to enforce such a judgment by the supreme court in equity is given :

1st. By the practice and decisions in the court of chancery (*Ludlow* agt. *Lansing*, *Hopk. Ch. R.* 231) ;

2d. By the Revised Statutes (2 *R. S.* 355, § 56, *4th ed. O. P.* 187, § 104; 2 *R. S.* 768, *O. P.* 535, § 1, *sub.* 3, *4th ed. sub.* 8 ; 2 *R. S. O. P.* 535, § , *sub* 8, *4th ed. p.* 769) ;

3d. By the Code, section 285, which provides that, where the judgment requires the performance of any other act than the delivery of the possession of real or personal property, or the payment of money (which is this case, because the judgment here requires the specific performance of a contract) after certified copy of the judgment *has been served on the defendant*, and he refuses to comply, the court may punish him for a contempt.

III. The steps of the plaintiffs, to procure a performance of the decree by the defendants of the acts required in the judgment, were regular.

(*a.*) The plaintiffs served a certified copy of the judgment on each of the defendants *personally*, at same time, with a summons to attend before Mr. Cambreleng, the referee, to carry into effect the decree. The judgment directed and gave power to the referee to carry it into effect in that respect.

·The defendants, by counsel, attended before the referee, and tried to show matters which was in impeachment of the decree. The referee made a special report of the facts to the court.

(*b.*) the plaintiffs procured, then, an order from Justice

DAVIES, for the defendants to show cause why they should not be punished as for a contempt in not complying with the decree. Judge DAVIES ordered that service should be made on the defendants by serving their attorneys. They admitted service, and procured an adjournment to see their clients. In the meantime they saw their clients, *attended on the adjourned day, and opposed* the motion. Judge DAVIES overruled the opposition and made the order of commitment.

The appearance of Wetmore and Bowne in opposition to the motion gave jurisdiction to the court, after the judgment had been personally served. (*Mahony* agt. *Penman*, 1 *Abb. P. R.* 35; *Flynn* agt. *Hudson R. R. Co.* 6 *How. p.* 308.)

(*c.*) By section 285, all that is required to bring a party into contempt is to serve a certified copy of the judgment personally on the party defendant. The Code seems to provide for no other proceeding other than when a refusal to comply with the judgment appears, the court shall punish for contempt.

(*d.*) The statute as to contempts does not require imperatively that written interrogatories must be put; an order to show cause is enough. (*Albany City Bank* agt. *Schermerhorn*, 9 *Paige*, 372; *Wilson* agt. *Fitzsimmons*, 5 *Duer*, 629, *affirmed in court of appeals, Dec.* 31, 1858; *see affirmance alluded to in McCartan* agt. *Van Syckel*, 10 *Bosw.* 697; *Taylor* agt. *Baldwin*, 14 *Abb.* 166; *Clapp* agt. *Lathrop*, 23 *How.* 433, *opn.* 441; *Brush, ex'r* agt. *Lee, affirmed at June Term*, 1867, *court of appeals.*)

A court of chancery might always commit on affidavits, without first putting interrogatories. (*Yates' Case*, 9 *Johns. p.* 395; *decree overruling Yates* agt. *The People*, 6 *Johns.* 337; *decree affirming The Yates Case*, 4 *Johns.* 317.)

So a court of chancery have, when a defendant has designedly kept out of the way, specified that the mode of service to bring him into contempt might be on his attorneys, instead of being on him personally. (*Albany City Bank* agt. *Schermerhorn*, 9 *Paige*, 372.)

(*e.*) The proceedings were properly entitled in the cause. (*Brown* agt. *Andrews*, 1 *Barb.* 227; *Stafford* agt. *Brown*, 4 *Paige*, 360; *People* agt. *Craft*, 7 *Paige*, 325.)

IV. Judge DAVIES' order of December, 1857, was a direct adjudication, as well on the subject of the defendants' contempt as on the regularity of the adjudication on that contempt. It could have been appealed from; it cannot be collaterally impeached on the ground of irregularity. (*Higbie* agt. *Edgerton*, 3 *Paige*, 253; *White* agt. *Merritt & Wheaton*, 3 *Seld.* 352.)

The court of chancery have, in a number of equity cases, held a party for contempt in disobeying orders of which he had notice, even though not subpœnaed nor served on him. (*People* agt. *Brower*, 4 *Paige*, 405; *Hall* agt. *Thomas*, 3 *Edw.* 236; *People* agt. *Compton*, 1 *Duer*, 512.)

(*a.*) The statute on contempts contemplates two modes of procedure:

1. By preliminary arrest and putting interrogatories;

2. By order to show cause, in which case the personal attendance of the party is not required. (*Albany City Bank* agt. *Schermerhorn*, 9 *Paige*, 372.)

The latter course was here adopted. It appeared to the court that the defendants were absenting themselves from the state. They then prescribed the service to be made on the attorneys. This the court could do. (*Albany City Bank* agt. *Schermerhorn*, 9 *Paige*, 372; *Watson* agt. *Fitzsimmons*, 5 *Duer*, 629; *Case of Yates*, 4 *Johns.* 317; *Yates* agt. *Lansing*, 9 *Johns. R.* 395.)

(*b.*) It is to be presumed that every objection was taken on the 30th December, 1857, to the adjudication of Justice DAVIES, by defendants' counsel, and that the same was passed on by Justice DAVIES. It is therefore *res adjudicata* in this case, and cannot be disturbed, even if the learned judge erred. (*Higbie* agt. *Edgerton*, 3 *Paige*, 253.) If not so taken by the defendants' counsel, it is waived.

(*c.*) There is a manifest distinction between criminal con-

tempts and the conviction of a contempt in a proceeding to enforce a civil remedy. (*See Lansing* agt. *Easton*, 7 *Paige*, 364, 367, *opinion; Conover* agt. *Wood*, 5 *Abb.*, 84, *p.* 88, *opinion; People* agt. *Compton*, 1 *Duer*, 512.)

(*d.*) The jurisdiction of this court at special term, at the time Justice DAVIES made his order, must be presumed, it being a court of general jurisdiction.

In commitments for contempt, where the imprisonment is intended as a punishment for the offense, it should specify some definite time; but where it is designed to compel obedience to an order of court, it should be only so long as the contumacy continues. (*Goff's Case*, 3 *Maule & Selw.* 203; 1 *Burns*, 382; *Hurd*, 415; 2 *Rev. Stat. O. P.* 538, § 23, *p.* 774, 4*th ed.*)

V. The excuses set up as a reason why the defendants did not comply with the decree were inadmissible to relieve the defendant from his contempt, and were properly disregarded by the referee and overruled by Justice DAVIES.

(*a.*) These facts were complete before the judgment, and before the referee's report was made upon the issues in the cause.

The defendants having omitted to make this defense in the action to prevent the judgment, cannot make it to frustrate the judgment by preventing its execution. Any such excuses could have been set up by the defendants *before judgment, if there was any validity to them,* by leave of the court, on supplemental answer. (§ 177 *Code.*) Those excuses were set up before the referee and before Mr. Justice DAVIES, who made the order of 30th December, 1857, and were by them overruled.

VI. The defendant was not without remedy to be relieved from his imprisonment. His remedy was:

1st. To comply with the course pointed out by Justice SUTHERLAND in his opinion; or,

2d. To move, under the act of 1843 (*Laws of* 1843, *p.* 8);

to be relieved from imprisonment, on the ground of his utter inability to comply with the decree;

3d. By conveying the house in question by a good and satisfactory title, or by giving a good and satisfactory compensation for it.

VII. The decision of the general term below, reported in 37th Barb. Sup. Court Reports, 97, proceeded on the substantial propositions that interrogatories were indispensably requisite to be put to the defendant, before a contempt could be committed.

The following cases cited, dispose of that position, viz.: Albany City Bank agt. Schermerhorn (9 Paige, p. 372); Watson agt. Fitzsimmons (5 Duer, 629). Affirmed in December term, 1858; affirmance alluded to in McCartan agt. Syckel (10 Bosw. 697); Taylor agt. Baldwin (14 N. Y. R. 166); Clapp agt. Lathrop (23 How. 423); Brush, Ex.'r agt. Lee, affirmed in June term, 1867, court of appeals.

It further proceeded on the substantial proposition, that a personal service of the order to show cause on the party was necessary, or that he should appear personally in court in compliance with it.

The case of the Albany City Bank agt. Schermerhorn (9 Paige, p. 374), decides, that where the party proceeds by an order to show cause, copies of the order, &c., must be served on the defendant or his solicitor; and if the party accused does not appear on the day appointed, the court may at once proceed to make a final decision, that the accused has been guilty of the contempt charged. It prescribes the form of commitment substantially like the one here.

The Code (§ 285), is in analogy with this. It requires the certified copy of the judgment to be served on the defendant personally; on his refusal the court may at once punish for contempt.

In the case at bar the certified copy of the judgment was so served. The defendant was personally summoned to

appear before the referee, *to whom, by the judgment, was referred the matter of carrying out the decree.*

The defendants *personally attended* before the referee, also by counsel, set up the same excuses there as they set up below. There they refused compliance with the decree.

The referee reported the whole facts to the court, also the excuses set up.

The proceedings in the case at bar were deliberate. The defendants had every notice consistent with a due regard to their liberty.

The general term below further proceeded on the ground that the order to show cause, was defective in this, to wit: " The order to show cause allowed by the statute, is to show cause why he should not be punished for the alleged misconduct, succinctly and plainly specifying the nature of this application."

The order in this cause cites the defendants *to appear and show cause why an attachment should not issue against them, and they be punished for the alleged contempt and misconduct.*

All that the plaintiffs in the action below by their proceeding desired, was an enforcement of the judgment, so that the words "why an attachment should not be issued against them," might have been stricken out and the remaining clause would have been sufficient upon which to have based the action of the court, for then the order would have called upon the defendants to have "shown cause on the given day and at the given place before the court, why they should not be punished as for a contempt, language directly within the purview of section 285 of the Code.

But the order to show cause is in substance and effect, without striking out any part of it, an order for the defendants, on the time and at the place mentioned, to show cause why they should not be punished for the contempt and misconduct alleged, and why an attachment should not be issued against them for that purpose, (which attachment in point of fact, was the award of the punishment.)

The reason which the general term gives for their view of the point suggested, seems to be untenable. They say, " that such an order may have been very easily understood by the defendant as meaning that an attachment would be applied for as preliminary to proceedings for the punishment of the alleged misconduct." This could not be, inasmuch as the relief sought was double, viz.: that "*why an attachment should not be issued, and they be punished for the alleged misconduct,*" words sufficiently plain to convey the required meaning.

The general term say further, that the defendant might justly have conceived, as the statute provides, that when the party is brought before the court upon an attachment, interrogatories shall be filed against him, to which he would have the right of making written answers on oath, and presenting sufficient reasons for not complying with the decree.

No defendant has a right to speculate that the court will give him an opportunity to put at defiance its judgments, by setting up plausible excuses for not obeying its decrees, and as the decisions are now, interrogatories may be dispensed with, it follows, that this view of the general term is untenable. But the conclusive answer to the general term lies in this, that the criticisms upon the order to show cause, belonged to the court before whom it was returnable, (viz.: Mr. Justice DAVIES), not to the general term below.

The general term further proceed in their opinion and in discussing, that it is necessary to have interrogatories put to the defendant, admit that there are some exceptions to the rule, which exceptions are confined to cases where the party admits the misconduct in open court, or where, if he denied it, the denial of the facts, would nevertheless leave him guilty of the offense.

The general term overlooked this fact, viz.: that the *decree in the action in the court below referred the direction of executing the decree to the referee, on whose report the judgment was entered. That referee stood quasi the court. Before*

*him appeared the defendants, and in effect* admitted their contempt by refusing to perform the decree. *It was to that extent an admision in open court in the very cause.*

The referee reported the facts, and on his report the court acted. The whole proceeding was in effect before the court.

By analogy, where the judgment directs the absolute performance of an act, and it appears affirmatively to the court, that the defendant does not or refuses to perform the act, it is unnecessary to bring the party in person before the court, or to file interrogatories.

In *People* agt. *Brown* (4 *Paige*, 405), which was an order *to deposit a deed with the master*, where it appeared that the defendant had knowledge of the order, although only served on his solicitor, the court held, that they had power to punish as a wilfull disobedience.

The general term finally conclude their opinion by alleging, that there is a fatal defect, viz.: that the court had no jurisdiction of the person. To sustain this, they cite *People* agt. *Nevins* (1 *Hill*, 158). Upon examining that case it will be found, that it affirms the power of the superior courts of record to commit by rule, without process. In the case at bar, we have both. (*See* 1 *Hill, pages* 166 *to* 170.)

It also repels the idea, that the proceedings of a superior court of record can be attacked collaterally.

" That a rule of a court of record, that a defendant be committed for contempt, need not recite the prior proceedings. If it is such a rule as the court might legally make under any supposable state of circumstances, all jurisdictional steps, and matters of *regularity are to be presumed.*"

Is a defendant's personal attendance necessary in court before he can be committed for a contempt? We submit not.

1. As to to a criminal contempt it is not, because by the statute a criminal contempt is a misdemeanor. (*See* 2 *R. S.* 692, § 14, *O. P.* 875, 4*th ed.; Degree of Punishment,* 538, §§ 221 *to* 225.) If a misdemeanor, the parties personal pres-

ence is not even necessary during the trial. (*See* 2 *R. S.* 735 *O. P.*, § 13, 4th ed., p. 918.)

2. As to a civil contempt, so long ago as *People* agt. *Van Wyck* (2 *Caines*, 333), the supreme court held it unnecessary on an order, to show cause for the party sought to be charged with the contempt, to appear in person, and they overruled on that point. (*People* agt. *Freer*, 1 *Caines*, 485; *People ex rel., Greeley* agt. *Court of Oyer and Terminer*, 27 *How. P. R.* 14.)

Mr. Justice Davies had power to provide that the order to show cause, should be served on the defendants' attorneys. (*See Albany City Bank* agt. *Schermerhorn*, 9 *Paige*, 372; *Stafford* agt. *Brown*, 4 *Paige*, 360.)

Such power has been frequently exercised by the old supreme court and court of chancery. (*See cases lastly cited*.)

What was the effect of the admission of the defendants' solicitor of the service of those papers (*see fol.* 138).

Section 417 of the Code provides, that where a party shall have an attorney in the action, the service of papers shall be made on the attorney instead of the party. Under this section the supreme court in *Drury* agt. *Russell* (27 *How. P. R.* 130), held it good service to serve the papers on a motion to set aside an attachment and an order for publication, on the plaintiffs' attorney in the action, although more than four years had elapsed since the judgment had been entered.

What was the effect of the attendance of the defendants' solicitor in open court, on the 18th December, 1857, and his procuring an adjournment of it until the 31st December, 1857, and his then opposing the motion?

In *The People ex rel. Greeley* agt. *Court of Oyer and Terminer of New York* (27 *How.* 14), the special term, Marvin, J., held, that the party charged with the alleged contempt might appear and answer by counsel, which had the same effect as if he were present, and cited *People* agt. *Van Wyck* (2 *Caines' R. p.* 333).

In *Hollingsworth* agt. *Duane* (*Wallace, Sen'r R. p.* 78), the

court held, that the defendant may defend himself on the order to show cause in person or by counsel, and that interrogatories could not be awarded unless he asked for them.

Was it necessary for the plaintiffs, after serving the certified copy of the judgment on the defendants, under section 285, and then getting a personal refusal from the defendants to comply with it, to serve the subsequent papers personally on the defendants?

The general term also failed to consider one matter very controlling, viz., that when the defendants are chargeable with notice of the order or decree they violate, they may be punished as for a contempt, even though the papers are not personally served. This has often been done in the old courts of chancery, in cases of violation of injunction orders. (*See People* agt. *Brower*, 4 *Paige*, 405; *Hall* agt. *Thomas*, 3 *Edw.* 236.) And by the courts since the Code. (*See People* agt. *Compton*, 1 *Duer*, 512; *Livingston* agt. *Swift*, 23 *How. Pr. R.* p. 1.)

E. F. BULLARD, *for respondent.*

The commitment was irregular, because the order to show cause was not personally served, and the defendant was not personally in court.

What is said about serving on the solicitor, in the cases cited on the other side, is *obiter*, as in each of those cases the question as to the manner of service was not before the court. (9 *Paige*, 372; 4 *Paige*, 378.)

The defendant also relies upon the points in reported case (37 *Barb.* 100), and also upon the opinion of Justice CLERKE.

The case quoted (2 *Barb. ch. p.* 278), saying that substituted service may be good, do not sustain that position.

In the case of *Weston* agt. *Faulkner* (2 *Price*, 2), the defendant tried to avoid service, and the order to show cause was served by throwing the paper into the window of his dwelling house.

Pitt agt. Davison.

On application to the court *ex parte,* to direct the manner of service, the court remarked, "that service of such order at the dwelling house should be considered sufficient to ground the application for an attachment."

The court did not say that it would be sufficient to authorize a final decision.

It does not appear what proceedings were had in that case subsequently, and such *ex parte* authority is not sufficient to justify the order made below.

Again, no such facts were presented to the court in this case, upon which the order of December 9, 1857, was made. *Durant* agt. *Moore* (2 *Russell & My.* 33) expressly holds the service must be personal.

The final decree, in 1856, determined the suit, and the duty and authority of Bowne, as attorney for Davison, then ceased. (1 *N. Y. Pr.* 74.)

This proceeding may be likened to proceedings supplementary to execution. Who would claim that such proceedings could be served upon the attorney, instead of the party?

The constitution says the party cannot be deprived of liberty, except by due process of law. Who can assert that such proceeding was due process of law?

Whether substituted service, by publication or leaving at dwelling house, may be proper, does not arise in this case.

An injunction or other order, forbidding a party to do an act, may be served in any manner by which notice is brought to the knowledge of the party; but that rests upon a different principle. The order and notice secures the lien or rights of the other party, but does not punish the party for their violation.

There is no hardship in requiring personal service. The party cannot be punished until actually arrested, and then he could be brought into court and allowed to answer, if he could. (1 *Hoff. Ch. Pr.* 434; 1 *Abb.* 399.) That was not done in this case.

*By the court,* PARKER, J.   This is an appeal from an order
of the general term of the supreme court, reversing an order
of the special term, which denied defendant's motion to set
aside a previous special term order specifying the defendant
guilty of a contempt of court, and committing him therefor.
The action was for the specific performance of a contract by
which Joseph Davison agreed to convey certain premises to
the plaintiffs.   Judgment was rendered adjudging the plain-
tiffs entitled to a specific performance of the contract, and
directing this defendant, to whom Joseph Davison had fraud-
ulently, as against the plaintiff, conveyed the premises, to
convey them to the plaintiff, free from any incumbrance
which he had put upon them.   A certified copy of the judg
ment was served upon the defendant personally, and he was
duly required to appear before the referee named in the judg-
ment, at a specified time and place, and make the conveyance
under his direction.   The defendant did not appear before
the referee; but, at the time and place specified, his counsel
appeared and offered to read an affidavit of the defendant, in
excuse of his non-compliance with that part of the judgment
which requires him to convey, showing that subsequently to
the contract of the sale to the plaintiffs, but prior to the
commencement of this suit, he mortgaged the premises for
$5,000, which mortgage, prior to the said judgment, was
foreclosed and the premises sold; for which reason the defend-
ant was unable to convey the premises to the plaintiffs.   The
referee refused to receive the affidavit as an excuse, and
demanded a compliance with the judgment, which was
refused.   He then made his report to the court, showing the
non-compliance of the defendant with the requirement of the
judgment, and the reasons therefor set forth in said affidavit.
Afterwards the plaintiffs obtained from a justice of the court
at chambers an order requiring the defendant to show cause
at a special term "why an attachment should not be issued
against him, and he be punished for his alleged contempt or
misconduct in not having conveyed," &c.   This order was

founded upon the judgment entered in the action, the summons and underwriting of the referee, requiring the defendant to appear before him and convey, the affidavit of service thereof, with a certified copy of the judgment and the report of the referee, and it contained a direction that it be served on the defendants' attorney. It was so served, but no service was made on the defendant personally.

At a special term, at which the order was returnable upon reading the judgment roll in the action, together with the said papers on which the order to show cause was granted, and the order to show cause with the admission of service of the same upon the defendant's attorney, and after hearing counsel for the respective parties, the court adjudged the defendant guilty of a contempt of court, in wilfully neglecting and refusing to comply with the terms and provisions of the judgment, and ordered that he be committed to the common jail of the city and county of New York, and there be closely confined and kept until he should comply with the requirements of the judgment. The defendant was subsequently arrested upon a precept issued pursuant to the order, and committed to jail. He then made the motion to set aside the order under which he was committed, and to be discharged from imprisonment, which motion was founded upon the papers on which that order was based, together with affidavits showing that he had no personal knowledge of the order to show cause above mentioned, until after the granting of the order directing his imprisonment. In opposition to the motion, affidavits were read on the part of the plaintiff showing, that after the referee had reported, and even nine months before the granting of the said order to show cause had been made, without any direction as to its service, and that after diligent search, the plaintiffs were unable to make personal service thereof; also controverting the fact stated in defendant's affidavit of his want of knowledge of this last order to show cause. This motion was denied at the special term. The general term on appeal

reversed the order denying the motion and discharged the
defendant from imprisonment. It is from the order of the
general term thus made that this appeal is taken. Was
there any such irregularity or defect in the granting of the
order under which the defendant was arrested, and impris-
oned as to require that it be set aside ?  By the first section
of title thirteen, chapter eight, part three, of the Revised
Statutes, entitled " of proceedings as for contempt to enforce
civil remedies and to protect the rights of parties in civil
actions," (2 *R. S.* 534, 1*st ed.*), provision is made that every
court of record shall have power to punish by fine and
imprisonment, or either, parties to suits and others *for any
disobedience to any lawful order, decree* or process of such
court, whereby the rights or remedies of a party in a cause
or matter depending in such court may be defeated, impaired,
impeded or prejudiced. And by section 285 of the Code it
is provided, that when a judgment requires the performance
of any other act than the payment of money, a certified copy
of the judgment may be served upon the party against whom
it is given, or the person or officer who is required thereby,
or by law, to obey the same, and his obedience thereto
enforced. If he refuse, he may be punished by the court as
for a contempt. It is plain, then, that the defendant, upon
refusing to obey the judgment, was guilty of his misconduct,
which made him liable to be proceeded against as for a con-
tempt. Two methods of proceeding against a party for such
misconduct are provided for by section five of the statute in
relation to contempt, above referred to, which are as fol-
lows :  The court shall either grant an order on the accused.
party to show cause, at some reasonable time therein speci-
fied, why he should not be punished for the alleged miscon-
duct, or shall issue an attachment to arrest such party, and
to bring him before such court to answer for such miscon-
duct. If the proceeding by attachment is adopted, the party
accused is to be arrested and personally before the court,
unless he gives a bond with sureties to appear on the return

of the attachment, and abide the order and judgment of the court thereupon (§ 12), and when he is brought into court upon the attachment, the court must cause interrogations to be filed, specifying the facts and circumstances alleged against him, and requiring his answer thereto (§ 19). Under this mode of proceeding no order for punishment for the misconduct by fine or imprisonment, can be made unless the party accused shall have been brought personally into court upon the attachment, or shall have voluntarily appeared therein; but in default of his being so brought in or so appearing, the court either awards another attachment or orders the bonds taken on his arrest prosecuted. If the other mode of proceeding is adopted, there is no specific direction in the statutes in regard to the manner in which the order to show cause shall be served, or as to the course of proceeding after service, except that section three provides, that when the misconduct is not committed in the immediate view or presence of the court, the court shall be satisfied by due proof, by affidavit of the facts charged, and shall cause a copy of such affidavits to be served on the party accused, a reasonable time to enable him to make his defense. The mode of proceeding adopted in the case at bar, was by the order to show cause with the affidavits upon which it was granted, was necessary. The learned judge who gave the opinion of the general term in the court below, held that personal service in such cases is indispensable, basing his opinion on the well settled principle of the common law, that no person shall be condemned unheard. If we keep in mind the distinction between proceeding to punish criminal contempts and proceedings as for contempts to enforce civil remedies, we shall see the reason why personal notification of the accusation, is under the principle invoked by the learned judge, indispensable in the one case while it may not be in the other. Where the proceeding is to enforce a civil remedy, the party in default has already had the opportunity of contesting his liability to perform what the proceed-

ing seeks to compel him to perform, and such proceeding is in effect, but an execution of the judgment or order against him. There is in the return of the proceedings, as carried out in this case, no more reason for determining it as an infraction of the principle, that no person shall be condemned unheard, than in every case where an execution may issue upon a judgment against the person of the defendant. Judgment in an action for tort, for example, is obtained against a defendant, whereby he is condemned to pay the plaintiff a specific sum of money. In order to compel him to pay the money, he is liable to arrest and imprisonment, and this without any opportunity to show cause against it. It is the consequence of his non-payment of the money which, after personal notice and the opportunity to contest the claim he has been adjudged therefor, he therefore is not condemned unheard. The execution against his person is in pursuance of the judgment which has been rendered against him by the court, after personal notice of the claim and full opportunity to be heard against it. In reference to the right to be heard, the defendant in the case at bar, occupies a similar position. His obligation specifically to perform the contract in question in the action, has been established by the judgment in regard to which he has been heard, and this proceeding is merely to enforce his fulfillment of that obligation. He can no more impugn the proceeding upon the ground of its contravention of the great principle alluded to, than if he were defendant in an execution against his person in an action of tort.

As has already been observed, the statute under which this proceeding was instituted does not specify in what way the order to show cause, with the affidavits on which it was founded, shall be served upon the party accused. When the proceeding is instituted by one party to an action against another, to enforce the performance of an order or decree, it is to be deemed, I think, a proceeding in the action, and all the papers are entitled in the action. (*Stafford* agt. *Brown,*

4 *Paige*, 360; *Brown* agt. *Andrews*, 1 *Barb. S. C. R.* 227.)
Hence it was, doubtless, that the chancellor, in *Albany City
Bank* agt. *Schermerhorn* (9 *Paige*, 372), said, "Where the
party proceeds by an order to show cause, copies of the order
and of the affidavits, and other papers on which it is founded,
must be served on the accused or his solicitor," &c. In *Wai-
son* agt. *Fitzsimmons* (5 *Duer*, 629), the plaintiff obtained an
order to show cause why the defendant should not be pun-
ished for his misconduct in refusing to deliver his property
to a receiver, upon the return of the order. The defendant
appeared and denied the alleged contempt, and the court
made a further order referring it to a referee to take testi-
mony and report whether the defendant was guilty of a con-
tempt. The referee reported the defendant guilty, and upon
this report, and all the prior proceedings, the plaintiff moved
the court for an order adjudging the defendant guilty of the
contempt. On the part of the defendant, it was insisted
that the court had no power to make the order of reference.
The court, however, said, "This proceeding is one had in the
action in which the judgment was recovered, and section
271, sub. 3 (of the Code), authorizes a reference in such a
case;" and after adverting to the two modes of procedure by
order to show cause and by attachment, the court further
said, the statute is silent where the first mode named is
adopted, as to the course to be thereafter pursued, whether
the defendant appears or fails to appear, It may, therefore,
be such as conforms to the general practice of the court upon
any order to show cause why relief should not be granted.
The proceeding was held regular, and the decision was affirmed
by the general term, and, as appears by a statement in 10 *Bosw.
R.* 697, was subsequently affirmed by the court. In the case at
bar, it is correct, I think, to say that the proceeding was one
taken in the action. The judgment remained unexecuted,
and the court was proceeding in the mode prescribed by the
statutes to execute its judgment. The order to show cause,
provided for by the statute, in the observance of any statu-

tory provision to the contrary, was then governed by the
practice of the court in regard to order to show cause, both
in respect to its service and the further proceedings upon it.
That according to such practice, an order to show cause may
be served upon the attorney of the defendant, will not be
denied.   Indeed, that is the mode of service of all papers in
the action prescribed by the Code, except the summons or
other process, or any paper to bring a party into contempt.
(*Code,* §§ 417, 418.)   The papers in this case, which brought
the party into contempt, were the certified copy of the judg-
ment and summons, and underwriting of the referee, requir-
ing the defendant to appear before him and make the con-
veyance.   These were personally served, and the defendant,
by his refusal to comply with them, was brought into con-
tempt.   The learned judge who gave the opinion in the
court below has referred, in support of his position, that per-
sonal service of the order is indispensable to the provision of
the statute on the subject of criminal contempts (2 *R. S.* 278,
§ 12, 1*st ed.*), requiring personal service, as follows:   " Con-
tempts committed in the immediate view and presence of the
court may be punished summarily; in other cases, the party
charged shall be notified of the accusation, and have a reason-
able time to make his defense."   But the succeeding 14th
section is as follows:   " Nothing contained in the preceding
sections shall be construed to extend to any proceeding against
parties or officers, as for a contempt, for the purpose of
enforcing any civil right or remedy."

The order to show cause is in effect but a notice of motion,
and, according to the practice of the court, may ordinarily
be served upon the attorney of the adverse party.   Although
in this case the judgment was entered in May, 1856, and
the order to show cause was made and served on the defend-
ant's attorney on the 9th of December, 1857, yet, inasmuch
as it appears that the defendant had been avoiding the service
of a prior order to show cause, and that, after service of the
second order, by the direction of the court, upon the attor-

ney, and before the granting of the order on which the defendant was arrested and imprisoned, he consulted with his said attorney, and has not denied that the attorney was authorized to appear for him and oppose the granting of the order for his arrest and imprisonment. As he did appear, it must be clear that the attorney is to be regarded as the defendant's attorney when the service was made, and that the service of the order to show cause was, in all respects, sufficient. (*Drury* agt. *Russell*, 27 *How. Pr. R.* 130.) Another ground stated in the opinion of the court below for the reversal of the order of the special term was that, in the order to show cause, the defendant was required to show cause "why an attachment should not be issued against him, and he be punished for his alleged contempt and misconduct in not having conveyed," &c., while the statute does not authorize an order to show cause why an attachment should not issue, but only why he should not be punished for the alleged misconduct. If the order required of the defendant more than the statute allowed, that would not make it void as to the requirements which the statute does allow. And the suggestion that it might have misled the defendant to suppose that only an attachment would be applied for, and that he would have an opportunity, when brought into court upon the attachment, to answer the accusations made against him upon interrogatories, is one which I think insufficient to justify a reversal of the order of the special term, since there is no pretence by the defendant that he was so misled.

As another ground for its order of reversal, the general term is inclined to the same opinion that even in this case it was necessary to file interrogatories, and that the order of commitment was not warranted until the defendant had been given the opportunity, upon interrogatories, to purge his contempt. The statutes cited, and what has already been said in regard to them, show, I think, that when the proceeding is by an order to show cause, no interrogatories are necessary, and such was the opinion of this court in *Brush*

agt. *Lee* (*MS. opinion; case decided June Term*, 1863). A further ground for decison of the general term, put forth in the opinion, is that, inasmuch as the defendant was never personally before the court in this matter, the court had no jurisdiction of his person, and therefore the order for his arrest and imprisonment was unauthorized and void. If the proceeding is to be regarded as one in the action, as I have endeavored to show it is, then, clearly, this ground is not well taken. The court having obtained jurisdiction of the person of the defendant in the action, retains that jurisdiction, for all purposes of enforcing the judgment, until its requirements are fully performed and executed. It is obvious, also, that the excuse for non-performance of the requirements of the judgment could not be regarded by the court as an excuse; for that would be permitting the party to set up as such excuse what he should have set up against the rendering of the judgment. After judgment has passed against him, no matter what would have constituted a defense to the judgment, and if in due time and manner brought before the court, prevented it, can be allowed as reason why it should not be enforced.

I am of the opinion that the order of the general term, reversing the order of the special term, is erroneous, and should be reversed.

All concur.

A motion for re-argument was made and denied.